IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| ADRIAN A. MILES, #292396 | § | |
| VS. | § | CIVIL ACTION NO. 9:10cv61 |
| JACK STAUDE, ET AL. | § | |

## MEMORANDUM OPINION AND
## ORDER OF PARTIAL DISMISSAL

Plaintiff Adrian A. Miles ("Miles" or "Plaintiff"), an inmate confined in the Estelle Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit under 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

The original complaint was filed on April 27, 2010. In it, Plaintiff claims that on April 10, 2009, he was incarcerated in the Eastham Unit. He contends that on that date, Correctional Officer Jack Staude was training Correctional Officer Clint Burrow on E-line where Plaintiff was housed in administrative segregation. Specifically, both were feeding prisoners. Officer Staude went to check the "diet list" for Plaintiff; while he was gone, Plaintiff showed Officer Burrow his diet pass. However, when Officer Staude returned, he informed Plaintiff he was "not on the diet list, and if [he didn't] want [the] regular tray then [he wouldn't] eat at all." Complaint at 7.

Plaintiff agreed to receive the regular tray so that once the food slot was open, he could hold on to it until a sergeant was called. He followed through on that plan and held the food slot open. However, Officer Staude told Plaintiff he was not calling "rank," i.e., the sergeant, and ordered him to remove his hand from the food slot. He then went to the cell and began beating Plaintiff's fingers and hand with the metal bar used to open the food slot. Further, Officer Staude "used his knee to

1

press [Plaintiff's] hand pinned inside the food slot while beating on [his] hand." Complaint at 7. Apparently, at some point Officer Staude stopped and left, returning shortly later with a diet tray and, smiling, asked Plaintiff if he still wanted it. Plaintiff told Officer Staude that he wanted to see a sergeant and needed medical treatment.

Plaintiff noted in his complaint that he is taken from his housing in administrative segregation to the infirmary three times each day to take medication. On this occasion, when officers took him to the infirmary, Sergeant Bolton was present and met him there. Plaintiff explained that she is the sergeant over segregation and was the only ranking officer working on that day. He informed her that he had been assaulted by Officer Staude. Plaintiff alleges that she replied, "That[']s good for you, and next time you want to [*sic*] hold my food slot." Complaint at 7. Plaintiff then told the nurse that his hand felt broken and he needed treatment. On hearing this, Sergeant Bolton asked which hand and when Plaintiff replied it was his left, she grabbed his hand and twisted it into a position to see it, which caused pain through his entire arm. After looking at his hand, he alleges that Sergeant Bolton said, "It looks fine to me, now get out of my infirmary." *Id*. However, Plaintiff had not taken his medications yet and asked the nurse to treat his hand. The nurse manipulated his hand without taking his handcuffs off and also said that it looked fine to him.

Plaintiff alleges that he returned to his cell and wrote a sick call request and an I-60 to Major Fisher. On April 13, 2009, Major Fisher summoned him to explain the incident and told him that "he would take care of the matter." Complaint at 8. Plaintiff filed a Step 1 grievance pursuant to the TDCJ-CID grievance procedure on April 17, 2009. He alleges that he was later called to the administrative segregation officer where Lieutenant Smith conducted an investigation. Lieutenant Smith called in Officer Burrow, who, Plaintiff states, "gave a true statement to what happened," *id*., apparently meaning Officer Burrow either spoke in Plaintiff's favor or stated a version of the incident similar to Plaintiff's. After that, Plaintiff alleges, he was taken to a shower where pictures

2

were taken and a major use of force report was written and filed.

Following that, on April 26, 2009, Sergeant Bolton went to his cell and told him that Officer Staude had written up a disciplinary case against him.[1] When Plaintiff told her the disciplinary case was only to cover up Officer Staude's assault on him, she allegedly replied, "You['re] right now pack your property." *Id*. He contends that Captain King demoted him to Level III administrative segregation (from his previous Level I) and had Officer Staude write the disciplinary case against him, though he does not state the basis for that claim. He further contends that Major Fisher graded the disciplinary offense "major." Captain King was also the Disciplinary Hearing Officer ("DHO"). However, Plaintiff states that because of the statement made in his favor by Officer Burrow, the disciplinary case was dismissed. Nonetheless, he alleges, Captain King told him the case would be rewritten and that Plaintiff would remain on A-line until further notice. He alleges he went three weeks without a mattress, blanket or sheets and all of his property was taken before the hearing in which the disciplinary case was dismissed. He was also placed on food loaf for seven days and never received treatment for his hand.

On September 9, 2010, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id*. at 180. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Supervisor Ginger Lively, Warden Dwayne Newberry and Nurse Tara Patton testified under oath about prison policies and information contained in the Plaintiff's prison records.

Plaintiff's testimony verified the content of his complaint and amplified certain details. He

---

[1] Although he does not say so in the complaint, Plaintiff later testified that the disciplinary case was written up for "creating a disturbance" at the time of the original incident on April 10, 2009. *See* discussion below.

3

testified that before the April 10, 2009, incident, he was in Level I administrative segregation; after the incident, he was demoted to Level III, in housing for "aggressive" prisoners. Specifically, he testified that after Plaintiff filed his Step 1 grievance on April 17, 2009, Sergeant Bolton went to Lieutenant Smith on April 25 to have the grievance investigated. She was present during the investigation the lieutenant conducted that day, during which Officer Burrow corroborated Plaintiff's story. On April 26, Sergeant Bolton then invented the disciplinary case report and told Plaintiff to move to Level III housing status on April 27. The disciplinary case report, Plaintiff testified, was not actually filed until about 20 days after he filed his Step 1 grievance. It then took another one and one-half weeks to have the disciplinary hearing, during which time Plaintiff remained on Level III status. Plaintiff contended that Captain King was in charge of administrative segregation, but was also the DHO, which Plaintiff claimed was a conflict of interest. In any case, after the disciplinary charge was dismissed, on Officer Burrow's statement, he was not returned to Level I.

He also clarified that he had eventually seen a nurse, but "a sergeant" walked in and told the nurse how to write up the medical report. He had never had X-rays. He testified that he has difficulty in bending his fingers and suffered a cracked wrist. He also stated that he would have added a claim for deliberate indifference on the part of medical personnel, but did not know who they were.

Plaintiff contended that these events were "designed to be covered up." He alleged in his testimony that he was transferred to the Clements Unit in Amarillo between September and December 27, 2009, to cover up the assault incident, before the Warden at the Clements Unit discovered he is blind and transferred him to the Estelle Unit, where there is a blind program. He testified that he only has partial vision in one eye. He had previously been in the blind program at Eastham, with a therapist who would visit him from the Estelle Unit before he was transferred out of area as part of the "cover up."

4

Warden Dewberry testified that his records showed no disciplinary hearing in Plaintiff's case at all during the month he claimed it took place. He also testified that Captain King's assignment as the supervisor of the administrative segregation area has no bearing on his performing as DHO as well. Warden Dewberry also discussed the levels of administrative segregation. He testified that all of the cells, or "houses," in administrative segregation were the same, except for a few that were "hardened" to withstand a prisoner who is known to be destructive toward his cell. Different areas are generally apportioned for inmates assigned to Level I through III status. However, such prisoners were often housed in areas outside their Level assignment as room was available, with only a notice of mishousing being given to the headquarters in Huntsville. Level I administrative segregation is the same as housing in general population, except that there is no television. In Level III administrative segregation, personal property is restricted through the "Ad Seg Committee." This is usually done when a prisoner throws projectiles. A prisoner who spits is placed behind a paper mask; one who tears his clothes must wear a paper gown. Warden Dewberry testified that according to Plaintiff's records, he had never been demoted to Level III, but had always been Level I, though he might have been housed in an area usually apportioned to Level III classifications.

Nurse Patton reviewed Plaintiff's medical records and testified that there was no entry on April 10, 2009. On April 26, 2009, there was a use of force nursing note, including no chemical agents used, no physical injuries and that the patient, Plaintiff, had reported no injuries. He was seen that day for his hypertension, but nothing in the notes referred to a hand injury.

Plaintiff interjected, referring back to Warden Dewberry's testimony, and asked that when a disciplinary case is written up, what procedures are normally taken? He testified that, here, there was no paperwork, just moves to Level III and being put on food loaf.

Warden Dewberry testified that he was trying to understand what Plaintiff was saying. He testified that being placed on food loaf meal restriction was done for throwing projectiles or, as in

5

Plaintiff's case, for "jacking" the food slot. The food loaf restriction is not necessarily the result of a disciplinary case, but it does have to be approved by the Ad Seg Committee. He commented that in this Plaintiff's case, he has a disciplinary record so extensive that it may have been no use to write a specific report. If one had been written, it might have remained in "UP" or unprosecuted status. However, he testified, the restriction still undergoes the Ad Seg Committee process.

Regional Grievance Supervisor Lively testified that Plaintiff had administratively exhausted his claims. In response to Warden Dewberry's comment that he could not find a disciplinary case for the month Plaintiff identified, she testified that such a disciplinary case had existed and a hearing was conducted, but the case was overturned and removed from the record. Therefore, the Warden would not have it in the record he consulted. There had been a finding of guilty, then it was overturned. She could not tell whether any punishment would have been adjudicated before the case was overturned. She presented Plaintiff's Grievance, Classification, Medical, Use of Force and Emergency Action Center records. Plaintiff agreed without objection that the Court may review those records with regard to this litigation.

Other than a brief discussion of procedural matters, the *Spears* hearing then terminated.

Discussion and Analysis

To state a constitutional claim for relief under § 1983, a plaintiff must allege a right secured by the Constitution or the laws of the United States and a violation of that right by one or more state actors. *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 200 (5th Cir. 1994), *cert. denied*, 514 U.S. 1017, 115 S. Ct. 1361, 131 L. Ed. 2d 218 (1995). To be a state actor subject to liability under Section 1983, the defendant must act "under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia." 42 U.S.C. § 1983. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is

clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031, 85 L. Ed. 1368 (1941)). The Supreme Court has formulated a two-part approach to the issue of state action:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible . . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982).

Plaintiff's complaint does not specifically state a constitutional or federal law violation as the basis for his claims. However, his allegations sound in claims for an excessive use of force in violation of the Eighth Amendment and in retaliation for having filed a grievance.

Excessive Use of Force

The Supreme Court, in *Hudson v. McMillian*, 503 U.S. 1, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992), held that inmates raising allegations of excessive force must show that the force used was malicious and sadistic for the very purpose of causing harm rather than in a good faith effort to restore discipline; the Court also noted that the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Hudson*, 112 S. Ct. at 999.

In accordance with this decision, the Fifth Circuit has identified five factors which should be considered in determining whether an unnecessary and wanton infliction of pain was done in violation of an inmate's right to be free from cruel and unusual punishment. These factors are: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Baldwin v. Stalder*,

7

137 F.3d 836, 839 (5th Cir. 1998); *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992). It should be noted that "[n]ot every push or shove, even if it may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.) (quoted with approval in *Hudson*, 503 U.S. at 9), *cert. denied sub nom. John v. Johnson*, 414 U.S. 1033, 94 S. Ct. 462, 38 L. Ed. 2d 324 (1973).

Here, Plaintiff has alleged facts that arguably support an inference that he was assaulted after complaining that his meal was not in conformance with his ordered diet. If his testimony is credited, Plaintiff suffered broken fingers for the offense of holding a food slot door open. He was still confined in his cell and no direct threat to the officers bearing his meal; the only threat was to their authority. No apparent attempt was made to temper the severity of the force used in response. Plaintiff explicitly identifies Officer Staude as the assaulting officer. He also identifies Officer Burrow as a witness whose testimony contradicting his fellow officer during Plaintiff's disciplinary hearing caused the charge of "creating a disturbance" to be dismissed. He does not, however, contend that Officer Burrow had anything to do with the assault. He testified that he presented himself for medical treatment of his hand, but was dismissed by the attending nurse after Sergeant Bolton and possibly another unidentified sergeant dismissed Plaintiff from the infirmary and told the nurse what to write. He also presented his hand during the *Spears* hearing to demonstrate the difficulty he has in bending his fingers. His allegations state a claim of assault that Officer Staude must answer.

## Retaliation

The Plaintiff also alleged that he had been the victim of retaliation. In particular, he has been treated differently because he has filed grievances concerning the assault by Officer Staude and the lack of medical care Plaintiff received. To state a valid claim for retaliation under § 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the

prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). Officials may not retaliate against an inmate for using the grievance system. *Jackson v. Cain*, 864 F.2d 1235, 1249 (5th Cir. 1989). A plaintiff must allege facts showing that the defendant possessed a retaliatory motive. *See Whittington v. Lynaugh*, 842 F.2d 818, 820 (5th Cir.1988); *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1193 (5th Cir. 1985). The inmate must allege more than his personal belief that he was the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995, 118 S. Ct. 559, 139 L. Ed. 2d 400 (1997); *Jones*, 188 F.3d at 324-25. Mere conclusory allegations of retaliation are not enough. *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988).

Here, Plaintiff has alleged facts that arguably support an inference of retaliation. He explicitly identifies Sergeant Bolton and Officer Staude as participating in a cover up and a 20-day-later filing of a disciplinary case, which was allegedly trumped-up in retaliation for Plaintiff's having filed a grievance and which was subsequently dismissed by virtue of Officer Burrow's statement corroborating Plaintiff's story. In both his complaint and in testimony, Plaintiff stated that Sergeant Bolton specifically told him his disciplinary case had been written for that very purpose. In addition, Plaintiff explicitly identified Captain King as the authority who directed that Officer Staude write the disciplinary action. Further, after it was later dismissed, Captain King allegedly continued to retaliate against Plaintiff by keeping him confined in the harshest conditions reserved for aggressive Level III offenders who are known to tear up their cells and throw projectiles, none of which Plaintiff has been accused of. It is a matter of record that the disciplinary case was not written on Plaintiff until considerable time had passed after his alleged assault and after he had filed his grievances. Regional Grievance Supervisor Lively also testified based on Plaintiff's disciplinary records that the disciplinary charge against him had been dismissed, consistent with Plaintiff's testimony. Officer

9

Staude, Sergeant Bolton and Captain King must answer these claims against them.

<u>Officer Burrow and Major Fisher</u>

Plaintiff does not seriously state any claims against either Officer Burrow or Major Fisher. He only contends, in a conclusory manner, that Officer Burrow did not stop or report the assault and that Major Fisher "had complete knowledge of the matter and graded the [disciplinary] case major." Complaint at 8. Plaintiff alleges no facts regarding either conclusory claim. In fact, Plaintiff stated in both his complaint and in testimony that Officer Burrow did truthfully report the event during Plaintiff's disciplinary hearing. Regarding Major Fisher, at most Plaintiff has alleged that he acted in a supervisory capacity when he graded the charge of "causing a disturbance" a major disciplinary infraction before it was investigated. However, the doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Plaintiff has neither alleged nor shown any evidence either way. Therefore, neither condition has been satisfied. Unless Plaintiff can allege sufficient facts or uncover evidence to support a claim against either individual, they are not subject to his lawsuit and will be dismissed without prejudice to Plaintiff's ability to sufficiently state a claim against either or both in the future.

It is therefore

**ORDERED** that the Plaintiff may proceed with his assault claim against Officer Jack Staude and his retaliation claim against Officer Staude, Sergeant T. Bolton and Captain W. King. It is further

**ORDERED** that the Plaintiff's claims against Officer Clint Burrow and Major C. Fisher are **DISMISSED** without prejudice.

So **ORDERED** and **SIGNED** this **13** day of **September, 2010.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE