IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

ADRIAN A. MILES, #292396        §

VS. §               CIVIL ACTION NO. 9:10cv61

JACK STAUDE, ET AL. §

MEMORANDUM OPINION ON DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Adrian A. Miles ("Miles" or "Plaintiff"), an inmate confined in the Estelle Unit of

the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID" or

"TDCJ-ID"), proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil

rights lawsuit under 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the

consent of the parties pursuant to 28 U.S.C. § 636(c).

## I.     BACKGROUND

The original complaint was filed on April 27, 2010. In it, Plaintiff claims that on April 10,

2009, he was incarcerated in the Eastham Unit. He contends that on that date, Correctional Officer

Jack Staude was training Correctional Officer Clint Burrow on E-line where Plaintiff was housed

in administrative segregation. Specifically, both were feeding prisoners. Officer Staude went to

check the "diet list" for Plaintiff; while he was gone, Plaintiff showed Officer Burrow his diet pass.

However, when Officer Staude returned, he informed Plaintiff he was "not on the diet list, and if [he

didn't] want [the] regular tray then [he wouldn't] eat at all." Complaint at 7 of 17.

Plaintiff agreed to receive the regular tray so that once the food slot was open, he could hold

on to it until a sergeant was called. He followed through on that plan and held the food slot open.

However, Officer Staude told Plaintiff he was not calling "rank," i.e., the sergeant, and ordered him

1

to remove his hand from the food slot. He then went to the cell and began beating Plaintiff's fingers and hand with the metal bar used to open the food slot. Further, Officer Staude "used his knee to press [Plaintiff's] hand pinned inside the food slot while beating on [his] hand." *Id*. Apparently, at some point Officer Staude stopped and left, returning shortly later with a diet tray and, smiling, asked Plaintiff if he still wanted it. Plaintiff told Officer Staude that he wanted to see a sergeant and needed medical treatment.

Plaintiff alleged that he was regularly taken from his housing in administrative segregation to the infirmary three times each day to take medication. On this occasion, when officers took him to the infirmary, Sergeant Bolton was present and met him there. Plaintiff alleges that she is the sergeant over segregation and was the only ranking officer working on that day. He informed her that he had been assaulted by Officer Staude. Plaintiff alleges that she replied, "That[']s good for you, and next time you want to [*sic*] hold my food slot." *Id*. Plaintiff then told the nurse that his hand felt broken and he needed treatment. On hearing this, Sergeant Bolton asked which hand and when Plaintiff replied it was his left, she grabbed his hand and twisted it into a position to see it, which caused pain through his entire arm. After looking at his hand, he alleges that Sergeant Bolton said, "It looks fine to me, now get out of my infirmary." *Id*. However, Plaintiff had not taken his medications yet and asked the nurse to treat his hand. The nurse manipulated his hand without taking his handcuffs off and also said that it looked fine to him.

Plaintiff alleges that he returned to his cell and wrote a sick call request and an I-60 to Major Fisher. On April 13, 2009, Major Fisher summoned him to explain the incident and told him that "he would take care of the matter." Complaint at 8 of 17. Plaintiff filed a Step 1 grievance pursuant to the TDCJ-CID grievance procedure on April 17, 2009. He alleges that he was later called to the administrative segregation office where Lieutenant Smith conducted an investigation. Lieutenant

2

Smith called in Officer Burrow, who, Plaintiff states, "gave a true statement to what happened," *id*., apparently meaning Officer Burrow either spoke in Plaintiff's favor or stated a version of the incident similar to Plaintiff's. After that, Plaintiff alleges, he was taken to a shower where pictures were taken and a major use of force report was written and filed.

Following that, on April 26, 2009, Sergeant Bolton went to his cell and told him that Officer Staude had written up a disciplinary case against him. When Plaintiff told her the disciplinary case was only to cover up Officer Staude's assault on him, she allegedly replied, "You['re] right now pack your property." *Id*. He contends that Captain King demoted him to Level III administrative segregation (from his previous Level I) and had Officer Staude write the disciplinary case against him, though he does not state the basis for that claim. He further contends that Major Fisher graded the disciplinary offense "major." Captain King was also the Disciplinary Hearing Officer ("DHO"). However, Plaintiff states that because of the statement made in his favor by Officer Burrow, the disciplinary case was dismissed. Nonetheless, he alleges, Captain King told him the case would be rewritten and that Plaintiff would remain on A-line until further notice. He alleges he went three weeks without a mattress, blanket or sheets and all of his property was taken before the hearing in which the disciplinary case was dismissed. He was also placed on food loaf for seven days and never received treatment for his hand.

Following an evidentiary hearing conducted on September 9, 2010, pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), the Court issued an Order of Partial Dismissal and an Order to Answer (docket entries #22, 23). In the Order of Partial Dismissal, the Court dismissed all claims against Officer Clint Burrow and Major C. Fisher and permitted the claims to advance against Officer Staude, Sergeant T. Bolton and Captain W. King. On the Court's Order to Answer, these remaining Defendants filed their answer on October 11, 2010 (docket entry #26). Following initial

disclosures and other proceedings, these same Defendants brought the instant Motion for Partial Summary Judgment ("MPSJ") (docket entry #33) on January 13, 2011. In support of the MPSJ, Defendants filed three exhibits. Ex. A is a Major Use of Force Report relating to Plaintiff; Ex. B contains certain classification and disciplinary records pertaining to Plaintiff; and Ex. C contains grievance records pertaining to Plaintiff.[1] They have also propounded a list of Material and Undisputed Facts ("Mat'l and Undisp. Facts"). *See* MPSJ at 5-6. Since that time, the parties have filed witness and exhibit lists (in the case of Plaintiff, a motion for witnesses) and other documents, but Plaintiff has not filed any opposition to the MPSJ.

In the MPSJ, Defendants assert that they are entitled to Eleventh Amendment immunity for claims made against them in their official capacities; and that the claims of retaliation against the three of them fail and should be dismissed. Therefore, they move, all remaining claims against Defendants King, Bolton and Staude should be dismissed from this action with the exception of the single claim of excessive use of force Plaintiff asserts against Defendant Staude, which alone should go to trial.

Inasmuch as Plaintiff has not filed anything in opposition to the MPSJ, the Court will presume that he does not oppose the MPSJ as filed. *See* Eastern District of Texas Local Rule CV-7(d) ("In the event a party fails to oppose a motion in the manner prescribed herein, the court will assume that the party has no opposition."). The MPSJ is ripe for consideration.

---

[1]     So far, the Court has cited pleadings by their page number as reflected in the electronic filing available on the Court's electronic filing system, CM/ECF. With regard to Exhibits A, B and C, they are electronically filed in parts of approximately 30 pages each, which breaks the exhibits into segments. However, CM/ECF assigns a unique number to each page on the docket, starting with PageID #1 on page 1 of the complaint and thus sequentially as each individual page is chronologically entered on the docket. For ease of citation, the Court will refer to these PageID numbers for the exhibits, particularly in this case as the Bates numbers stamped by Defendants are not fully legible.

## II.    STANDARD ON SUMMARY JUDGMENT

Rule 56(a), Fed. R. Civ. P., provides that the Court may only grant a motion for summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *VRV Development L.P. v. Mid-Continent Cas. Co.*, 630 F.3d 451, 455 (5th Cir. 2011) (quoting Fed.R.Civ.P. 56(a)). The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. *Id*. Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Id*.

Summary judgment is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *Honore v. Douglas*, 833 F.2d 565 (5th Cir. 1987). The district court must look to the full record, including the pleadings, affidavits, and depositions. *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Under this standard, fact questions are considered with deference to the nonmovant. *Reid v. State Farm Mutual Automobile Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby*, 477 U.S. 242,

255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986).  The court resolves factual controversies for

purposes of summary judgment in favor of the nonmoving party, but only when there is an actual

controversy, that is, when both parties have submitted evidence of contradictory facts.  *Little*, 37 F.3d

at 1075.  The court does not, however, in the absence of any proof, assume that the nonmoving party

could or would prove the necessary facts.  *Wallace v. Texas Tech University*, 80 F.3d 1042, 1048

(5th Cir. 1996) (citing *Little*, 37 F.3d at 1075).

"The mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no

genuine issue of material fact."  *Anderson*, 477 U.S. at 247-248.  An issue is "genuine" if the

evidence supporting its resolution in favor of the party opposing summary judgment, together with

any inference in such party's favor that the evidence allows, would be sufficient to support a verdict

in favor of the party.  *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987).  A "material fact"

is one that might affect the outcome of the suit under governing law.  *Anderson*, 477 U.S. at 248, 106

S. Ct. at 2510.  "When the moving party has carried its burden under Rule 56(c),[2] its opponent must

do more than simply show that there is some metaphysical doubt as to the material facts ... Where

the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

there is no 'genuine issue for trial.'"  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S.

574, 586-587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (footnote omitted).

Furthermore, in that this is a civil rights claim pursuant to 42 U.S.C. § 1983, "To invoke the

jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury

traceable to the defendant and likely to be redressed by a favorable judicial decision."  *Lemons v.

Swann*, 412 Fed. Appx. 672, 673 (5th Cir. 2011) (per curiam) (quoting *Lewis v. Cont'l Bank Corp.*,

---

[2]        The predecessor to the current Rule 56(a).

494 U.S. 472, 477, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990)).

## III.   DISCUSSION AND ANALYSIS

The Court will consider each of the Defendants' two issues on summary judgment in order.

### A.   Eleventh Amendment Immunity

The Eleventh Amendment provides that the State of Texas, as well as its agencies, are immune from liability for money damages in cases such as this. As the United States Supreme Court as stated,

> The Eleventh Amendment confirms the sovereign status of the States by shielding them from suits by individuals absent their consent. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 116 S. Ct. 1114, 134 L .Ed. 2d 252 (1996). To ensure the enforcement of federal law, however, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Ex parte Young*, [209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)]. This standard allows courts to order prospective relief, *see Edelman v. Jordan*, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed.2 d 662 (1974); *Milliken v. Bradley*, 433 U.S. 267, 97 S. Ct. 2749, 53 L. Ed. 2d 745 (1977), as well as measures ancillary to appropriate prospective relief, *Green v. Mansour*, 474 U.S. 64, 71-73, 106 S. Ct. 423, 88 L .Ed. 2d 371 (1985). Federal courts may not award retrospective relief, for instance, money damages or its equivalent, if the State invokes its immunity. *Edelman*, *supra*, at 668, 94 S.Ct. 1347.

*Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437, 124 S. Ct. 899, 157 L. Ed. 2d 855 (2004). Further, in *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that "neither a State *nor its officials acting in their official capacities* are 'persons' under § 1983." The Supreme Court upheld the dismissal of the Michigan Department of State Police and its Director sued in their official capacity for damages. *Id*. (emphasis added).

Here, it is undisputed that Defendants Staude, Bolton and King are or were at all pertinent times employees of TDCJ-CID for the purposes of this lawsuit. *See* Mat'l and Undisp. Facts A (citing Complaint at 5 of 17). Plaintiff has sued each of the Defendants in their official, as well as individual, capacities. *See* Complaint at 1 of 17 (under caption: "Each Defendant is being sued and

held liable in their individual and official capacity as employees of TDCJ-ID while working under color of state law"). In addition, the relief Plaintiff seeks from the Defendants includes an award of monetary damages in the amount of $20,000 from Defendant Staude, $15,000 from Defendant Bolton and $15,000 from Defendant King. *See id*. at 6 of 17.

Plaintiff has not filed anything in opposition nor offered competent summary judgment evidence contrary to Defendants' assertions and argument. Therefore, to the extent that Plaintiff seeks monetary damages from any of these Defendants in their official capacity, such relief is barred as a matter of law and Defendants are entitled to summary judgment on that issue.

### B.      Retaliation

In this issue, Defendants address two separate claims of retaliation. The first includes all three of them for allegedly filing a disciplinary case against Plaintiff in retaliation for his filing a grievance. The second includes only Defendant King, who Plaintiff alleges ordered him demoted to Level III administrative segregation (from Level I) and allegedly placed Plaintiff on A-line housing until Defendant King said different. In that housing, Plaintiff alleges he "went three weeks without a mattress, blanket and sheets" and was "placed on (7) day food loaf by order of Captain King." Complaint at 8 of 17.

To state a valid claim for retaliation under § 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir.), *r'hng* and *r'hng en banc denied*, 203 F.3d 826 (5th Cir. 1999). Officials may not retaliate against an inmate for using the grievance system. *Jackson v. Cain*, 864 F.2d 1235, 1249 (5th Cir. 1989). A plaintiff must allege facts showing that the defendant possessed a retaliatory motive. *See Whittington v. Lynaugh*, 842 F.2d 818, 820

(5th Cir.), *cert. denied*, 488 U.S. 840, 109 S. Ct. 108, 102 L. Ed. 2d 83 (1988); *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1193 (5th Cir. 1985). He must allege more than his personal belief that he was the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995, 118 S. Ct. 559, 139 L. Ed. 2d 400 (1997); *Jones*, 188 F.3d at 324-25. Mere conclusory allegations of retaliation are not enough. *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir.), *cert. denied*, 488 U.S. 985, 109 S. Ct. 540, 102 L. Ed. 2d 570 (1988). Moreover, he must show that "but for" a retaliatory motive, the defendants would not have engaged in the action. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084, 116 S. Ct. 800, 133 L. Ed. 2d 747 (1996). A plaintiff must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Id*. Finally, the retaliatory adverse act must be more than a *de minimis* act. *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir.), *cert. denied*, 549 U.S. 1038, 127 S. Ct. 596, 166 L. Ed. 2d 443 (2006).

### 1.       Claim Of Retaliation Through Writing A Disciplinary Case

Plaintiff first claims that on April 17, 2009, he filed a Step 1 grievance on the matter and "a few weeks later," he was called to the administrative segregation office to discuss it. Complaint at 8 of 17. There, investigatory officer Lt Smith called Officer Burrow, who gave "a true statement to what happened." *Id*. Afterward, Plaintiff was taken to the shower where pictures were taken and, subsequently, a major use of force report was filed. *Id*. It was later, on April 26, 2009, that Defendant Bolton came to his cell and told him that Defendant Staude had written a disciplinary case on Plaintiff. *Id*. Plaintiff alleges that Defendant Bolton told him that the disciplinary case was written to "cover the assault" against him by Defendant Staude. *Id*. He also alleges that Defendant King told Defendant Staude to write the disciplinary case. *Id*. This is the first instance of alleged retaliation; there are additional allegations against Defendant King alone, which will be addressed

in the next section, below.

The disciplinary case Defendant Staude wrote against Plaintiff was dated April 25, 2009, and was for taking control of a cell food slot and refusing to allow it to be closed, therefore "Creating a Disturbance" in violation of prison regulations. *See* MPSJ Ex. A at PageID #162; Mat'l and Undisp. Fact E. Plaintiff admitted having taken control of the food slot. *See* MPSJ Ex. A at PageID #163 (Preliminary Investigation Report by Sgt Parish); Complaint at 7 of 17 ("I took control of the food slot . . . ."). Therefore, the actual disciplinary case stated a truth, regardless of whether it was brought in retaliation.

In any event, it is undisputed that Plaintiff was never prosecuted or punished under the disciplinary case. *See* Mat'l and Undisput. Fact G; MPSJ Exs. B and C.[3] Further, Plaintiff does not allege in his complaint that he was ever punished under the disciplinary case. To the contrary, he admits that "because of the statement I received from Officer Burrow, the case was dismissed." Complaint at 8 of 17. Therefore, he has suffered no actual injury as is required in order to sustain an action pursuant to 42 U.S.C. § 1983. *Lemons*, 412 Fed. Appx. at 673; *Lewis*, 494 U.S. at 477.

Furthermore, as Defendants point out, the refusal to prosecute or the reversal of a conviction of a disciplinary case does not itself establish causation to support an inference of retaliatory motive when the basis for the disciplinary case itself is true. *See Romero v. Lann*, 305 Fed. Appx. 242, 243 (5th Cir. 2008) (per curiam) ("An examination of the record confirms that one conviction was overturned, but there is nothing in the record to suggest that this action was due to a finding that the charge was false or was otherwise flawed in such a way as to support [plaintiff's] assertions that the charge was brought solely to retaliate against him.") (citing *Woods*, 60 F.3d at 1166).

---

[3] At the *Spears* hearing conducted September 10, 2010, Regional Grievance Supervisor Ginger Lively also testified that the disciplinary case had either not been prosecuted or a finding of guilt had been overturned and the case removed from the record.

Plaintiff has not raised anything in opposition to Defendants' competent summary judgment evidence, nor has he established a "genuine dispute as to any material fact." *VRV Development L.P.*, 630 F.3d at 455. Therefore, Defendants are entitled to summary judgment on this issue.

### 2.     Claims Against Defendant King Alone

Plaintiff has also raised a number of claims of other acts of retaliation aimed at Defendant King alone. Specifically, Plaintiff alleges that, aside from the disciplinary case issue discussed above, Captain King ordered him demoted to classification Level III, that he would remain on "A-line" where he went three weeks without a mattress, blanket or sheets and where all of his property was taken, and that he was placed on food loaf for seven days by Captain King's order. Complaint at 8 of 17. Plaintiff's complaint does not include the dates of these actions. However, his allegations state that they were in response to the incident with Defendant Staude: "By orders of Captain King, I was demoted to Level III and he also had Officer Staude write the case against me." *Id*. It is undisputed that incident occurred in April 2009. *Id*.; Mat'l and Undisp. Fact E. In fact, Plaintiff's entire complaint and lawsuit surrounds and derives from the incident with Defendant Staude.

Despite Plaintiff's allegation that he was demoted to classification Level III by Defendant King in retaliation for the confrontation with Defendant Staude, his classification and disciplinary records reflect that no such downgrade in status occurred at all either in April or in the months soon after that. *See generally* MPSJ Ex. B (unit classification records). In fact, Plaintiff had been promoted from Level III to Level I administrative segregation on March 30, 2009. *See* Mat'l and Undisp. Fact K (citing MPSJ Ex. B at PageID #202). His classification records reflect he remained at Level I until September 8, 2009, when he was demoted to Level II; he was ultimately demoted to Level III on September 14, 2009. *See* Mat'l and Undisp. Fact L and Ex. B at PageID #201, 186-87. That is simply too remote in time from the events of mid-April 2009 for the Court to consider the

ultimate demotion to Level III a retaliatory act as Plaintiff alleges it to be. *Goudeau v. City of Tomball, Tex.*, 68 F.3d 468, 1995 WL 581820, at \*2 n.10 (5th Cir. Sept. 5, 1995) (ten months between protected activity and discharge too remote to be considered retaliation) (citing *Gonzales v. Galveston Indep. Sch. Dist.*, 865 F. Supp. 1241 (S.D. Tex. 1994); *David v. Hill*, 401 F. Supp. 2d 749, 758 (S.D. Tex. 2005). The same is true of Plaintiff's alleged placement on food loaf and the loss of his property. *See generally* Ex. B. at PageID #228-57. In fact, the first instance of being placed on food loaf occurred on September 8, 2009, and again on September 14, 2009. *See id*. at PageID #243, 248. The classification and disciplinary records do not reflect that Plaintiff ever lost his property.

Defendants also demonstrate that Defendant King does not have the power to unilaterally "order" Plaintiff's demotion to Level III as he suggests; nor does he have the power to unilaterally have Plaintiff moved between or to remain in cells, nor to place him on a sole diet of food loaf as Plaintiff alleges. *See* Mat'l and Undisp. Fact M (citing Ex. B at PageID #185-96; 197-203; 228-57, and testimony of Warden Dewberry before this Court at Plaintiff's *Spears* hearing). This evidence shows that these powers are reserved to the Unit Classification Committees, the Unit Classification Department, and the Administrative Segregation Committees. *See id*. In fact, each such change in Plaintiff's status - including his administrative segregation classification level, movement between cells and placement on food loaf - was directed by one of those organizations acting in concert, not at the unilateral order of Defendant King. Therefore, Plaintiff's allegations are conclusory and unsupported by fact. *Stults*, 76 F.3d at 655. At most, his allegations merely reflect his personal belief that he was retaliated against, which is insufficient grounds on which to prevail on this claim. *Johnson*, 110 F.3d at 310.

Going further, Defendants also offer an interposing reason for Plaintiff's demotion to Level

III, his cell reassignment and placement on food loaf. In September 2009, Plaintiff exhibited a string

of violent and disruptive behavior, including flooding his run and starting fires on September 4,

2009; threatening an officer and attempting suicide on September 7, 2009; and throwing hot tea in

the eyes of another officer on September 13, 2009. *See* Mat'l and Undisp. Fact N (citing Ex. B at

PageID #167 (Unit Classification Review dated June 22, 2010); 259-316 (incident and offense

reports and investigations)). It was for these offenses, in September 2009, several months after the

April confrontation with Defendant Staude, that Plaintiff received his demotion and disciplinary

action. *See* Mat'l and Undisp. Facts O and P. Again, Plaintiff has not raised any evidence or factual

dispute in opposition to Defendants' summary judgment evidence. *VRV Development L.P.*, 630 F.3d

at 455. Defendants are entitled to summary judgment on this issue.

The sole remaining claim in this case lies only against Defendant Officer Staude, for the

excessive use of force against Plaintiff on or about April 10, 2009.

## IV.    CONCLUSION

In light of these findings, it is therefore

**ORDERED** that Plaintiff's claims for monetary damages against Defendants in their official

capacities are hereby **DISMISSED**. It is further

**ORDERED** that Plaintiff's claims of retaliation against Defendants Staude, Bolton and King,

as set forth herein, are hereby **DISMISSED**. It is finally

**ORDERED** that Defendants Bolton and King are **DISMISSED WITH PREJUDICE** from this action and that the sole remaining claim against Defendant Staude for trial is that of excessive use of force against Plaintiff on or about April 10, 2009.

So **ORDERED** and **SIGNED** this **11** day of **August, 2011.**

 

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE