IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| ADRIAN A. MILES, #292396 | § | |
| VS. | § | CIVIL ACTION NO. 9:10cv61 |
| JACK STAUDE, ET AL. | § | |

<u>MEMORANDUM OPINION AND
ORDER OF DISMISSAL</u>

Plaintiff Adrian A. Miles, an inmate confined in the Estelle Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit under 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

**I.    HISTORY OF THE CASE**

The original complaint was filed on April 27, 2010. The original Defendants' original answer was filed on October 11, 2010. The parties each made a demand for trial by jury.

In his complaint, Plaintiff alleged that he was the victim of excessive use of force by Officer Jack Staude and retaliation by Officer Staude, Sergeant T. Bolton, Captain W. King, Officer Clint Burrow and Major C. Fisher. On September 9, 2010, the Court conducted an evidentiary hearing in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The Court concluded at that time that the claims against Officer Burrow and Major Fisher should be dismissed, but that the remaining claim for excessive use of force against Officer Staude and the remaining retaliation claims against Officer Staude, Sergeant Bolton and Captain King should proceed.

1

Subsequently, on January 13, 2011, the remaining Defendants moved for partial summary judgment on the issue of the retaliation claims. Plaintiff did not file a response in opposition. Following consideration of the motion, the Court concluded that Plaintiff's claims of retaliation against Defendants Staude, Bolton and King should be, and were, dismissed, and that the remaining claim of excessive use of force should proceed against Defendant Staude only.

In the course of this litigation, Plaintiff moved three times for appointment of counsel. Following his third such motion, with a jury trial set for pre-trial conference on October 3, 2011, and jury selection and trial to commence on October 4, 2011, the Court appointed counsel to represent Plaintiff at trial. At the pre-trial conference, Plaintiff moved to dispense with the jury and proceed with a bench trial only. However, Defendant elected to exercise his right to jury trial. Nonetheless, on the morning of trial, October 4, 2011, Plaintiff informed his assigned counsel he wished to proceed *pro se* and discharge the assigned counsel, and so moved the Court prior to voir dire. Both parties then agreed to proceed with a bench trial only. The assembled jury pool was thanked for their service and dismissed. The bench trial was completed the same day, October 4, 2011.

## II. FACTS OF THE CASE

The witnesses called to testify were Plaintiff Adrian A. Miles, Defendant former Correctional Officer Jack Staude, former Correctional Officer Clint Burrow, former Correctional Officer Sherica Smith, Grievance Investigator Floyd Hicks, and Registered Nurse Mary Beth Pipkin. The parties also submitted documentary evidence. Plaintiff's Exhibits 1 through 4 consisted of (1) selected portions of the Texas Department of Criminal Justice ("TDCJ") Use of Force Manual (pages 1-2 and 13); (2) portions of Plaintiff's grievance records (pages Bates numbered 45-61); (3) the Use of Force Investigation of the incident that was the subject of the lawsuit; and (4) Plaintiff's Medical Pass.

Defendant's Exhibits 1 through 8 consisted of (1) selected portions of Plaintiff's medical records; (2) through (5) Use of Force investigation color photographs of Plaintiff's hand(s); (6) a photograph of a prison cell food slot mechanism; (7) a photograph of a prison cell food slot key; and (8) a photograph of a prison cell food slot in the closed position. All of the exhibits were admitted without objections.

The Court notes that the Plaintiff had the burden to prove his case by the preponderance of the credible testimony and evidence. He did not do so. Instead, Defendant Staude's version of the events was just as likely, if not more likely, to be true as the Plaintiff's version of the events. Although the testimony of some of the witnesses corroborated portions of Plaintiff's version, testimony of the same witnesses also corroborated Defendant's version. The medical evidence presented in particular corroborated Defendant's version and tended to disprove Plaintiff's version of the events, especially with regard to his claims of injury.

After considering all of the evidence and testimony, the Court makes the following findings of fact based on the preponderance of the credible testimony and evidence. The Plaintiff was confined in administrative segregation at the Eastham Unit[1] on April 10, 2009. On that evening, then-Officers Staude and Burrow were feeding the inmates on E-Line, where Plaintiff was housed. Defendant Staude was training Officer Burrow. When Officer Burrow attempted to give a food tray to Plaintiff through the food slot in his cell door, Plaintiff complained that he was supposed to receive a diet tray from the "Diet For Health" or "DFH" selection. Officer Burrow consulted with Officer Staude, who went to check the diet list for Plaintiff with the kitchen. While he was gone,

---

[1] Although he is currently incarcerated at the Estelle Unit, the incident that is the subject of Plaintiff's lawsuit occurred at the Eastham Unit.

Plaintiff showed his diet pass to Officer Burrow. When Officer Staude returned, he informed Plaintiff he was not on the diet list, and that he could have the regular tray or none at all.

Plaintiff agreed to receive the regular tray so that once the food slot was open, he could hold on to it until a sergeant was called. He followed through on that plan, pulled the tray into his cell and held the food slot open, pushing down on the door and wrapping the fingers of his left hand around the forward edge of it, also known as "jacking the food slot." TDCJ procedure requires that a supervisor or sergeant be called when a prisoner jacks the food slot. However, Officer Staude did not call a sergeant, but ordered Plaintiff to remove his hand from the food slot. He repeated his order. Officer Staude testified that he feared the result of a security breach and reacted accordingly. Although his testimony of being afraid was not entirely credible, there was evidence presented that prisoners have been known to extend homemade weapons through an open food slot or to engage in "chunking," or throwing unsanitary fluids and objects, including urine and feces, through the food slot. Officer Staude used his food slot key, a pronged metal bar about seven inches long, to hit the underside of the food slot door in an effort to scare Plaintiff into removing his arm from the open slot. On the second such attempt, Officer Staude fell off-balance when he swung at the food slot door and hit Plaintiff's hand. Having actually hit the hand by accident on the second swing, Officer Staude repeated the effort and again hit Plaintiff's hand, though with little force. Although there was invective being exchanged between Plaintiff and Officer Staude, Plaintiff did not cry out in pain or otherwise evidence that he had been hurt. He did not remove his hand from the food slot door.

Having failed in the attempt to scare Plaintiff out of the food slot, Officer Staude then attempted to force Plaintiff's arm out by pushing the door up to the closed position. He thereby pressed Plaintiff's arm between the door and the frame of the food slot with light force but Plaintiff again did not remove his arm and Officer Staude desisted in the effort. Officer Burrow witnessed

4

these actions and another trainee Correctional Officer, Sherica Smith, who was in the picket cage at the end of the hall, also briefly witnessed a portion of the events. Although Defendant Staude is six feet, six inches tall and weighs 330 pounds, it is clear that he never put more than light force into play based both on witnesses' descriptions and Plaintiff's virtually nonexistent injuries. At that point, Officer Staude left the area for a brief time and consulted with a superior, who ordered him to give Plaintiff the diet tray he wanted. Officer Staude returned with the diet tray and offered it to Plaintiff, who then refused the meal and asked to go to medical, where he was escorted. Although Plaintiff testified his hand had been bloodied and was swollen, and insisted he had broken two fingers, there was no blood observed on Plaintiff or at the scene of his cell.

Plaintiff was met at medical by the attending nurse and by supervisor Sergeant Bolton. Neither observed any injury and there was no medical record made of the visit. Officer Staude admitted he attempted to cover up the fact that he had used force, albeit light force, against Plaintiff, and no Use of Force investigation was undertaken as a result of the visit to medical. However, after Plaintiff filed a grievance over the incident, which was investigated by Grievance Investigator Floyd Hicks, the truth came out and a Use of Force investigation was undertaken, approximately two weeks after the incident occurred.[2] The report and photographs were admitted at trial. None of the photographs, which were date-stamped April 25, 2009, or 15 days after the incident, showed any sign of injury. At trial, Plaintiff presented his hand for examination, claiming that there was a scar on his thumb. However, the Court, sitting as finder of fact, could not discern any scar.

---

[2] As noted above, Plaintiff's original complaint included claims of retaliation that centered around the failed cover-up and a disciplinary case that was written against him for violating the rules and causing a disturbance by taking control of or jacking the food slot. However, after the truth became known and a Use of Force investigation was undertaken, the disciplinary case was never prosecuted and the retaliation claims were therefore dismissed. Because those claims were not included in the bench trial, they and any testimony Plaintiff adduced related solely to a claim of retaliation will not be discussed here.

Even before the Use of Force investigation, Plaintiff was seen at medical numerous times soon after the incident for a number of reasons. These included being required to take medication three times a day, which he frequently refused to do, while being observed by medical personnel. There was no evidence of any hand injury in any report. For example, on April 14, 2009, he was seen based on a sick call request dated April 13, 2009, for his desire to cease taking all medications except metoprolol. Plaintiff did not complain of any hand pain or injury. *See* Defendant's Ex. 1 at 1. Again, on April 15, 2009, he was seen on a sick call request dated April 14, 2009, for the stated reason of problems with athlete's feet and to discuss cataract surgery. However, Plaintiff again did not complain of or seek treatment for any hand injury. *See id*. at 2. Nurse Pipkin, a nursing supervisor at the Eastham Unit under contract with the University of Texas Medical Branch ("UTMB") testified at trial that a prisoner with a pending sick call may discuss any other medical problem during the sick call, even if it is not listed on the actual sick call request.

Plaintiff did complain once of pain in his left hand during medical examination on April 25, 2009, in connection with the Use of Force investigation. At that time, medical records showed that:

> P[atient] states he has pain in the L[eft] index and long fingers since 4-10-09 when his L[eft] hand was closed in a food slot. He denies any problem with moving his fingers and demonstrated full [range of motion] of the L[eft] hand and digit[]s. There's no noticeable swelling of the digits while viewing the Patient on DMS. He was advised he will be referred to his unit provider on 4/27/09 for evaluation of his [complaint of] pain. He verbalized understanding of and agreement to this plan of care.

*See id*. at 4-5. Nurse Pipkin demonstrated at trial what the full "range of motion" of the hand and fingers means, rotating her wrist, making a fist and flexing each individual finger against the thumb or the palm. A follow-up examination at Plaintiff's unit on April 26, 2009, entitled "Use of Force Nursing Note," states, "Patient denies any injuries . . . ." and that "No visible injuries . . . noted." *See id*. at 6. The specific assessment or diagnosis at that time was "No adverse health effects from

6

use of force." *Id*. Again on April 29, 2009, he stated on a 90 Day Outpatient Administrative Segregation Assessment examination that he had not "experienced any traumatic events during the last 90 days . . . ," *see id*. at 7, and that he reported "no complaints," *id*. at 8. Follow-on medical progress notes reflect equally a lack of any complaint of or treatment sought for a hand injury. The court finds that Plaintiff suffered no injury, or at most a *de minimis* injury, from this incident.

## III. DISCUSSION AND ANALYSIS

Plaintiff alleged that he was subjected to an excessive use of force. The Supreme Court has emphasized that the core judicial inquiry in an Eighth Amendment excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *See Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). An excessive use of force claim has both subjective and objective components. *Id*. at 8. In other words, there is the issue of whether the officials acted with a "sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id*. A claimant must allege and prove there was an "unnecessary and wanton infliction of pain." *Id*. at 5. In deciding whether the use of force was wanton or unnecessary, a court may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id*. at 7 (internal quotation and citation omitted). The absence of a serious injury is relevant to but not dispositive of the excessive force claim. *Id*.

The Supreme Court added the following caveat concerning the nature of the force used in a given situation:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause

of action. *See Johnson v. Glick*, 481 F.2d, at 1033[3] ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'"

*Hudson*, 503 U.S. at 9-10 (other citations omitted).

On remand from this decision, the Fifth Circuit has identified five factors which should be considered in determining whether an unnecessary and wanton infliction of pain was done in violation of an inmate's right to be free from cruel and unusual punishment. These factors are: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *See Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992); *see also Williams v. Valenti*, 2011 WL 2650883, at *1 (5th Cir. July 7, 2011) (citing *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998)).

Here, the preponderance of the credible evidence reveals that no more than a light force was used against Plaintiff in an effort to cause him to remove his hand and arm from the open food slot and therefore secure a potential threat to officer safety. Further, that when Officer Staude observed that the use of light force did not result in Plaintiff removing his arm, he consulted with a supervisor and followed the orders he was given, which ultimately resulted in Plaintiff removing his arm and the food slot being closed.

Considering the *Hudson* factors, first, Plaintiff suffered either no actual injury or such a *de minimis* injury that he sought no treatment for it during a number of post-incident sick calls. Although he testified of being bloodied and swollen with bruises, his claims are directly controverted

---

[3] *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.), *cert. denied sub nom. John v. Johnson*, 414 U.S. 1033, 94 S. Ct. 462, 38 L. Ed. 2d 324 (1973).

8

by witness statements, the Use of Force photos and the medical evidence of record in this case. When he presented his hand to the Court and claimed it had been scarred, no such marking was discernable. Almost immediately after the incident, he had the full use of his hand and demonstrated its full range of motion. Thus, the first factor weighs against Plaintiff.

Second, Plaintiff clearly violated the prison regulation against taking control of or jacking the food slot. The prison requirement for keeping the food slot closed except when in genuine use is clear. There is a protocol in place when a prisoner does jack the food slot, including calling for supervisory assistance, which was not strictly followed in this case. Had Officer Staude followed that protocol, the application of force might have been avoided. This factor tends to weigh in Plaintiff's behalf.

Third and fourth, however, it is clear that there is also a security threat and potential danger to officers when the food slot is forcibly blocked open. Prisoners have used sharp implements on poles and dangerous fluids and solids thrown or "chunked" out of the food slot to attack officers in the past. Neither Officer Staude nor Officer Burrow were able to inspect Plaintiff's cell to determine whether he had such a weapon before he jacked the food slot. Officer Staude expressed that he was in fear of his personal safety by Plaintiff's actions. Although the Court does not necessarily accept this expression of fear under the circumstances, it is equally clear that a potential threat existed. Officer Staude's actions, if not in accordance with the established protocol, were aimed at causing Plaintiff to recoil or remove his hand and arm from the food slot. Therefore, Officer Staude's action was directly related to an at least potential security threat and the intended result was consistent with resolving the threat. These factors therefore tip generally toward Officer Staude.

Fifth and finally, Defendant Staude clearly tempered the force that he used in a manner appropriate to his perception of the circumstance. His intention was to induce or, in his words,

9

"scare" Plaintiff into removing his hand from the food slot door and to withdraw back into his cell. Officer Staude swung his seven inch key at the door and struck it - not Plaintiff's hand - at least once. On a subsequent attempt, he either mis-stepped or was off-balance and the key struck Plaintiff's hand. Another swing impacted Plaintiff's hand. However, in no case was the swing hard or with the full force of a six-foot-six-inch-300-pound guard, a fact independently corroborated by Officer Burrow. When it was apparent that Plaintiff would not "scare" back inside the food slot, Officer Staude attempted to force him to pull his arm in by pushing the door up toward the closed position. Again, he did not lean into it or attempt to slam it shut, as corroborated by Officer Burrow's testimony and the fact that Plaintiff's hand and arm showed no injury soon after the incident. Once that attempt failed and it appeared that Plaintiff would tenaciously cling to the food slot door, Officer Staude left to obtain supervisory direction. Ultimately, that resulted in the door being closed. Officer Staude admitted in testimony that he should not have undertaken even that light force and that he wished he had not done so. The Court agrees that his action was contrary to established prison procedure. Nonetheless, the fact that he limited the force he used to essentially a scare tactic and clearly did not put the level of force into either swinging the food slot key or trying to close the door that he was fully capable of given his physical size demonstrated that he did not act with either malicious intent or to inflict wanton pain.

In light of the first and fifth factors in particular, especially in conjunction with the third and fourth, Plaintiff has failed to prove that he was the victim of excessive use of force. Based on the preponderance of the evidence, Defendant Staude did not act with either malicious and wanton intent to sadistically inflict pain, nor was the result of the incident "harmful enough" to establish a constitutional violation. *Hudson*, 503 U.S. at 7. In fact, there is no evidence other than Plaintiff's self-serving and less than credible testimony that he was injured at all.

The Court is of the opinion, and so finds, that the Plaintiff was not a victim of excessive use of force and that judgment should be entered in behalf of Officer Jack Staude and against Plaintiff Adrian A. Miles, who shall take nothing. It is accordingly

**ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**. It is further

**ORDERED** that each party is to bear their own costs. It is finally

**ORDERED** that all motions by either party not previously ruled on are hereby **DENIED**.

So **ORDERED** and **SIGNED** this **5** day of **October, 2011.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE